UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                    09 CR 196 (RPP)
           - v. -
                                                                    **OPINION AND ORDER**

ADEREMI J. AKEFE

                          Defendant.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On March 19, 2013, Aderemi J. Akefe moved pro se for a new trial pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure. (Def.'s Mot. Req. New Trial ("Def.'s Mot."), 09 CR 196, ECF No. 134.) The Government responded in opposition to this motion on April 19, 2013. (Gov't Mem. in Opp'n to Def.'s Mot. New Trial ("Gov't Mem. in Opp'n"), 09 CR 196, ECF No. 138.) This motion was followed by a pro se reply, (Def.'s Reply to Gov't Resp. in Opp'n to Def.'s Mot. New Trial ("Def.'s Reply"), 09 CR 196, ECF No. 143), and a supplemental reply drafted by counsel (Def.'s Supplemental Reply to Gov't's Opp'n & in Further Supp. of Def.'s Mot. New Trial ("Def.'s Supplemental Reply"), 09 CR 196, ECF No. 147). The Government responded by letter to new arguments made in the supplemental reply. (Gov't Resp. to Def.'s Supplemental Reply ("Gov't Resp"), 09 CR 196.)

Taken together, Akefe's motions make two arguments. First, Akefe alleges that new evidence has come to his attention regarding one of the Government's cooperating witnesses, Hafrida Saad. This evidence, he argues, calls into question his guilt and discredits Saad's testimony. Second, Akefe alleges that the Government wrongfully withheld evidence that it was required to produce under Brady v. Maryland, 373 U.S. 83 (1963).

1

Having considered both of these arguments, the Court concludes that a new trial is not warranted in this case. None of the evidence referenced by Akefe was newly discovered and the Government did not withhold any Brady material. Even if Akefe's arguments had merit, the strength of the evidence of Akefe's guilt presented at trial leaves this Court with no "concern that an innocent person may have been convicted." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). Therefore, Akefe's motion for a new trial is DENIED.

## I.   BACKGROUND

This is Akefe's second motion for a new trial, and the second opinion written by this Court. Familiarity with the earlier opinion is presumed, and only background information relevant to the instant issue is described here.

On March 17, 2010, after a seven-day jury trial, and approximately one day of deliberations, a jury unanimously found Akefe and his co-defendant guilty on both of the counts charged. The first count charged Akefe with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin from 2005 to February 18, 2009, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A) & 846. The second count charged Akefe with conspiracy to import into the United States one kilogram or more of heroin from 2005 to February 18, 2009, in violation of 21 U.S.C. §§ 812, 952(a), 960(a)(1), 960(b)(1)(A) & 963.  The jury also unanimously answered the special interrogatory as to drug weight, finding that for each of the two charged conspiracies, Akefe either had personal involvement with or reasonably could have foreseen that the conspiracy involved one kilogram or more of heroin.

On April 2, 2010, Akefe moved for judgment of acquittal or, in the alternative, for a new trial. The Court denied that motion in an opinion dated July 21, 2010. United States v. Akefe, No. 09 CR 196, 2010 WL 2899805 (S.D.N.Y. July 21, 2010).

On October 11, 2012, Akefe filed a notice of appeal of his sentence. The appeal is now pending before the Second Circuit Court of Appeals.[1] Akefe subsequently made the instant motion pursuant to Rule 33(b)(1) of the Federal Rules of Criminal Procedure. On June 16, 2013, the Second Circuit issued an order granting Akefe an extension of time to submit his appellate brief and appendix until 30 days after this Court's decision on the instant motion. (2d Cir. Order 1, June 16, 2013, 12-4546 CR, ECF No. 53.)

## II.   DISCUSSION

### A.  Legal Standard

Evidence is newly discovered if it was not known to the defense before or during the trial or readily obtainable by the defense in the exercise of due diligence. See United States v. Soblen, 203 F.Supp. 542 (S.D.N.Y.1961), aff'd, 301 F.2d 236 (2d Cir.1962).

If evidence is newly discovered, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a).  However, a motion for a new trial should be granted only in cases where, after evaluating the entire record of the trial, a district court is left with a "real concern that an innocent person may have been convicted." Ferguson, 246 F.3d at 134. The newly discovered evidence must be of a sort that "could, if believed, change the verdict," United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995). The trial court's discretion in this determination is broad because its decision is informed by the trial over which it presided.  See United States v. Stewart, 433 F.3d 273, 296 (2d Cir. 2006).

---

[1] The parties' briefing discusses the issue of whether a new trial may be granted while an appeal is pending. (See Def.'s Supplemental Reply at 3; Gov't Resp. at 2-3.) There is no need to reach that issue in this case, as Akefe's motion is without merit.

3

**B. The Alleged "Newly Discovered Evidence" Regarding Government Witness Hafrida Saad**

Saad was arrested at JFK Airport on February 18, 2009 with about one and half kilograms of heroin. Akefe, 2010 WL 2899805 at *4. After her arrest, she provided statements about her past criminal involvement to agents working with the Drug Enforcement Administration ("DEA"). In the two days following her arrest, she participated in consensually recorded telephone calls and text messages with Akefe and others, leading to the arrest of Akefe. Id. at *4-6. In addition to testifying against Akefe, Saad participated thereafter as a witness in an unrelated prosecution of a heroin dealer named Chidi Ezeobi. (See United States v. Ezeobi, 10 CR 669, Trial Tr. at 101, ("Ezeobi Tr."), Oct. 12, 2011, ECF No. 54.)

Many of Akefe's arguments focus on evidence brought out in Saad's testimony in the Ezeobi trial, which Akefe claims is newly discovered. First, Akefe claims to have learned of Saad's prior drug transactions with Ezeobi subsequent to his trial. Second, Akefe claims that Saad testified in the Ezeobi trial that she had intended to deliver the 1.7 kilograms of heroin in February 2009 to Ezeobi. That testimony would be contrary to her testimony at the Akefe trial, where she testified that she was instructed to deliver the 1.7 kilograms of heroin to a hotel in Detroit where Akefe came to pick them up. Finally, Akefe claims that Saad's testimony regarding the amount of heroin proceeds that she picked up in Detroit in 2008 was inconsistent between the Akefe trial and the Ezeobi trial. In addition to the arguments Akefe makes about Saad's testimony, he also makes two additional claims. He states that information about Saad's use of multiple passports is newly discovered and he also states that certain emails are newly discovered. Akefe's argument is that all of this evidence, taken together, proves his innocence and discredits a Government witness.

First, Akefe purports to have been unaware during his March 2010 trial of prior drug transactions between Saad and Ezeobi. (Def.'s Mot. at 3; Def.'s Supplemental Reply at 4.) But, in fact, information about her prior drug transactions with Ezeobi was disclosed to Akefe in material produced in this case pursuant to 18 U.S.C. § 3500. [2] (See Gov't's 3504-06 at 4-6.) Furthermore, Saad gave testimony and was cross-examined at the Akefe trial about criminal activity underlying her prior drug transactions with Ezeobi between 2005 and 2008. Specifically, Saad testified that Ezeobi, who she knew as "Fuego," picked up drugs from her when she arrived in New York. (See United States v. Akefe & Alade, 09 CR 196, Trial Tr. at 377, ("Akefe Tr."), Mar. 9, 2010, ECF No. 59; see also id. at 419-33.) Notably, it was during Akefe's counsel's cross-examination of Saad that much of the testimony about Ezeobi occurred. See id. at 419-33. Akefe's claim that the Defense was unaware of Saad's drug transaction history with Ezeobi is therefore baseless.

Next, Akefe argues that the same 1.7 kilograms of heroin used to convict him were also used to convict Ezeobi. (See Def.'s Mot. at 2.) Akefe maintains that Saad testified in the Ezeobi trial that she had intended to deliver those 1.7 kilograms of heroin to Ezeobi in New York. (See Def.'s Mot. at 2.) In actuality, however, the transcript shows that at the Ezeobi trial, Saad testified that her only trips to deliver heroin to Ezeobi occurred between 2005 and 2008. (See Ezeobi Tr. at 120-60.) There was no testimony, in either trial, indicating that Ezeobi had anything to do with Saad's trip to the United States in February of 2009. In fact, Saad testified in both trials that in February 2009 she was told to bring the drugs to her suppliers' contacts in Detroit. (See Ezeobi Tr. at 165; see also Akefe Tr. at 398-401.) This testimony was backed up by transcribed telephone calls that were entered into evidence at the Akefe trial by the Government.

---

[2] Ezeobi is referred to by the nickname "Fuego" in the reports of interviews with Saad, as well as in much of Saad's trial testimony.

5

(See GX 4T-3; GX 4T-4.) In those calls, "Abby," the boyfriend for whom Saad delivered drugs, directed Saad to go to the Traveler's Inn in Detroit and to await the phone call of the individual who was to pick up the drugs. (See id.) Saad's testimony in the Ezeobi trial and the evidence presented in the Akefe trial showed that she delivered drugs to Detroit in February 2009, where Akefe was located, and not to New York, where she had previously delivered drugs to Ezeobi. Therefore, Akefe's claim here that the drugs used to convict him at trial were actually destined for Ezeobi is without any foundation whatsoever.

Finally, Akefe alleges that Saad's testimony in the Ezeobi trial contradicted her testimony in the Akefe trial. (See Def.'s Supplemental Reply at 4.) Saad's testimony in the Akefe trial was that she made drug deliveries to Detroit in 2008 and picked up the proceeds of the drug sales during a second trip to Detroit. (See Akefe Tr. at 393-95.) When asked how much money in proceeds she picked up during this second trip, Saad responded, "A lot. Maybe around $15,000." (Akefe Tr. at 395.) In the Ezeobi trial, by contrast, Saad testified that she delivered drugs to Detroit in 2008 and picked up $50,000 during the second trip. (See Ezeobi Tr. at 161-62.). Akefe is therefore correct to point out that Saad's testimony in the two trials is inconsistent.[3] However, he overlooks the fact that the § 3500 material given to the Defense in the Akefe trial was consistent with her Ezeobi trial testimony. That is to say, in the § 3500 reports made available to the Defense in the Akefe trial, Saad stated that during a second trip to Detroit in early 2008, she picked up $50,000 in proceeds. (See Gov't's 3504-06 at 11.) The Defense could have used the § 3500 material in its possession to confront Saad on the witness stand with her prior inconsistent statement. The Defense's failure to do so does not merit a new trial.

---

[3] The Government offers a possible source of the discrepancy, stating, "One potential explanation is that it was a typographical error or a misinterpretation by the translator, confusing fifteen with fifty, especially given that she described the amount as 'a lot.'" (Gov't Resp. at 2.)

In addition to evidence regarding Saad's connection to Ezeobi, Akefe also alleges that new evidence has surfaced of Saad's use of multiple passports bearing different names. (See Def.'s Supplemental Reply at 4.) However, this evidence is not newly discovered. Evidence of both her fake names and falsified passports were disclosed to the Defense in § 3500 material.[4] (See Gov't's 3504-06 at 1-2; Gov't's 3504-10 at 6.) At the Akefe trial, Saad acknowledged in her cross-examination testimony that she had used a passport under the name "Shelena." (Akefe Tr. at 423-36.) She also admitted to using three separate aliases: "Shelena Shelena," "Shelena Smith," and "Shelena Abrahams." (Akefe Tr. at 423-29.) Further, Defense counsel in both the Akefe trial and the Ezeobi trial questioned Saad thoroughly about the manner in which she obtained the falsified Indonesian passport under the name "Shelena." (Compare Akefe Tr. at 423-24, 460-62 with Ezeobi Tr. at 110-12.) Defense counsel in the Ezeobi trial, however, elicited two additional names that Saad used on falsified passports – "Sarah Helen Curwen" and "Yuli Ritiamingsih." (Ezeobi Tr. at 110-11.) The difference in the information elicited on cross-examination seems largely a matter of the tactical choices made by Defense counsel in the two separate trials; even if the evidence of these two additional names was unknown to Akefe's Defense counsel, there has been no showing that it is information relevant to the commission of the crimes charged in the indictment.

Finally, Akefe also alleges that emails derived from Saad's cell phone and SIM cards were not produced to the Defense at the time of trial. (See Def.'s Supplemental Reply at 4.) However, all relevant emails were provided to the Defense. (See Gov't's 3504-13 – 3504-28; see also Gov't's 3504-08 at 4-13.) In fact, the Government allowed the Defense to review all of Saad's emails, even personal emails unrelated to the case. (See United States v. Akefe & Alade,

---

[4] For example, Report 3504-10 says, "Saad stated that she got one passport in her real name: Hafrida Saad and two other passports in aliases." (Gov't's 3504-10 at 6.) Report 3504-06 also revealed that Saad had gone by the aliases "Shelena Shelena," "Shelena Smith," and "Shelena Abrahams." (Gov't's 3504-06 at 2.)

09 CR 196, Tr. of Prelim. Hr'g at 65, Mar. 2, 2010, ("Akefe Hr'g Tr. 3/2/10"), ECF No. 55.) Further, the Defense was provided § 3500 material that included a February 23, 2009 report stating that two cell phones were seized from Saad upon her arrest. (See Gov't's 3509-01 at 2-3.) These phones were available for review and analysis by the Defense. (See Gov't Resp. at 2.) The argument that that emails derived from Saad's cell phone and SIM cards were not produced to the Defense at the time of trial is therefore without merit.

### C. Government's Alleged Failure to Produce Brady Material

Akefe next argues that the Government failed to disclose Brady material. This argument is confined to transcripts from proceedings that took place in Detroit, Michigan, on February 23, 24, 26, and on March 17, 20, and 25, 2009.

A DEA agent who had taken part in the investigation and arrest of Akefe and his co-defendant testified at a joint probable cause and detention hearing on February 23 and also testified at a detention hearing for Akefe's co-defendant on February 24, 2009. (See United States v. Akefe & Alade, 09 MJ 30087, Tr. of Prelim. Hr'g at 10-62, ("Akefe Hr'g Tr. 2/23/09"), Feb. 23, 2009, ECF No. 10; United States v. Akefe & Alade, 09 MJ 30087, Tr. of Prelim. Hr'g at 6-9, ("Alade Hr'g Tr. 2/24/09"), Feb. 24, 2009.) After another day of testimony put on by the Akefe and his co-defendant on February 26, 2009, the Michigan court continued the proceedings until March 17, 2009, when it would issue its ruling. (See United States v. Akefe & Alade, 09 MJ 30087, Tr. of Prelim. Hr'g at 12-40, 76-77, ("Akefe Hr'g Tr. 2/26/09"), Feb. 26, 2009, ECF No. 11.) In the interim, the Government learned that the DEA agent who had testified at the February 23 and 24, 2009 hearings was involved in a pending Office of Professional Responsibility ("OPR") investigation in an unrelated matter. (See United States v. Akefe & Alade, 09 MJ 30087, Tr. of Prelim. Hr'g at 2-4, ("Akefe Hr'g Tr. 3/20/09"), Mar. 20, 2009, ECF

No. 18; see also United States v. Akefe & Alade, 09 CR 196, Tr. of Prelim. Hr'g at 4, ("Akefe Hr'g Tr. 11/2/09"), Nov. 2, 2009.)

At the March 20, 2009 proceeding, the Government moved that the DEA agent's testimony of February 23 and 24, 2009 be stricken and not considered for bail purposes.[5] (See Akefe Hr'g Tr. 3/20/09 at 2-3.) The Defense did not object, and the Michigan court granted the motion, ruling that it would not use the testimony of the DEA agent in making its bail determination. (See id. at 4.)

Here, Akefe argues that the Government failed in its Brady obligations in two ways: first, it "ignored Judge Batts' order" to produce an agent's testimony that was elicited during the February proceedings and subsequently stricken; second, it failed to produce transcripts from hearings on March 17 and 25, 2009. (See Def.'s Mot. at 2; Def.'s Supplemental Reply at 5.)

### 1. Stricken Testimony from Detroit Preliminary Hearings

Akefe's argument that the Government withheld evidence of the DEA agent's testimony and the Government's motion to strike is weakened by his counsel's supplemental reply brief, which acknowledges that the Government had made production of the transcripts of the Michigan court proceedings for February 23, 24, and 26 and March 20, 2009. (See Def.'s Supplemental Reply at 5.) At the preliminary hearing before Judge Batts on November 2, 2009 described in Akefe's motion, Akefe's then-counsel, Mr. Aidala,[6] made a request for "all the

---

[5] On March 4, 2009, a Grand Jury in this District returned an indictment against Akefe and his co-defendant on the two counts described above so a probable cause determination was not needed from the Michigan court. (See United States v. Akefe & Alade, 09 CR 196, Indictment, ECF No.4.)

[6] David M. Burgess appeared on Akefe's behalf from the February 23, 2009 hearing in Detroit until the case was transferred to this District. (See Akefe Hr'g Tr. 2/23/09; see also United States v. Akefe & Alade, 09 MJ 30087, Notice of Att'y Appearance, ECF No. 2.) After the case was transferred to this District, Akefe was represented by CJA attorney Louis Aidala from April 1, 2009 to February 17, 2010, at which point Mr. Burgess was admitted to practice pro hac vice. (See United States v. Akefe & Alade, 09 CR 196, Mins. Entry, Apr. 1, 2009; United States v. Akefe & Alade, 09 CR 196, Order for Admis. Pro Hac Vice on Oral Mot., Feb. 17, 2010, ECF No. 33.) From February 19, 2010 and through Akefe's trial, Mr. Burgess was Akefe's counsel. As is relevant here, Burgess was

9

minutes of those hearings [in Michigan]," stating, "Apparently at least the suspicion is that the prosecutor found out something was incorrect or at some point in time moved to strike the prior testimony of an agent, and we would like to see what that was all about." (Akefe Hr'g Tr. 11/2/09 at 3-4.) The Government stated in response that it had the transcripts of "those hearings," and would make them available to counsel.[7] (See Akefe Hr'g Tr. 11/2/09 at 5.) In fact, the Government had already provided transcripts of preliminary hearings in Detroit on February 23, 24, and 26, 2009 to Defense counsel in a letter dated April 8, 2009.[8] (See Gov't Mem. Ex. G. 2:1-2.)

Further, the Government produced the March 20, 2009 transcript, in which no testimony was taken, but which included the Government's motion to strike the DEA agent's testimony, at trial, at this Court's request. (See Akefe Tr. at 607.) Accordingly, any claim by Akefe that information regarding the motion to strike before the Michigan court was withheld from the Defense is contradicted by documentation of the Government's production of the February hearing transcripts and transcripts of the March 20, 2009 proceedings.

### 2. The March 17 and 25, 2009 Transcripts

Akefe further argues that the Government violated its obligations under Brady by failing to produce transcripts from proceedings held in Detroit on March 17 and 25, 2009. (See Def.'s Supplemental Reply at 5-6.) Again, this argument is without merit.

---

present at the Detroit proceedings and was also Akefe's trial counsel. Aidala was counsel on behalf of Akefe at the time of the Nov. 2, 2009 hearing before Judge Batts.

[7] Neither the Government nor the Defense specified the dates of the Michigan hearings to which they were referring. (See Akefe Hr'g Tr. 11/2/09 at 3-4.)

[8] Akefe faults the Government for not explaining why it would promise to produce records on November 2, 2009 that it has already produced on April 8, 2009. (See Def.'s Supplemental Reply at 5.) This claim is spurious and needs no reply.

First, no written transcripts exist for the March 17 and 25, 2009 proceedings. A review of the criminal docket for the Eastern District of Michigan shows that proceedings did take place on March 17 and 25, 2009, but no written transcripts for these two proceedings were generated. (See United States v. Akefe & Alade, 09 MJ 30087, Mins. Entry, ("Mins. Entry 3/17/09"), Mar. 17, 2009 (stating that a detention hearing was held as to Akefe that was continued until Mar. 20, 2009); United States v. Akefe & Alade, 09 MJ 30087, Mins. Entry, ("Mins. Entry 3/25/09"), Mar. 25, 2009 (stating that a $50,000 unsecured bond was entered for Akefe).) Though no written transcript was generated for either proceeding, both were tape recorded. (See Mins. Entry 3/17/09; Mins. Entry 3/25/09.)

Second, because no transcripts had been recorded, the Government did not know at the time of trial that the proceedings had taken place. In United States v. Avellino, the Second Circuit stated that "to the extent the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant." 163 F.3d 249, 255 (2d Cir. 1998).

In its letter response, the Government avers that it was unaware of the March 17 and 25, 2009 proceedings. (See Gov't Resp. at 3-4.) It further notes that when the Government requested a copy of the transcript of the Michigan prosecutor's request to strike the agent's testimony, it was provided the March 20, 2009 transcript in response. (See Gov't Resp. at 4.) There is no reason to doubt the Government's assertion that it did not have knowledge of the March 17 and 25, 2009 proceedings.

Finally, the Defense has not shown that evidence of the two proceedings is material under Brady. Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v.

<u>Whitley</u>, 514 U.S. 419, 433-34 (1995). Akefe claims that information about the March 17 and 25, 2009 proceedings is material to the Defense because the proceedings may have concerned the OPR investigation of the DEA agent. (<u>See</u> Def.'s Supplemental Reply at 6.)

There is no indication that the March 17 and 25, 2009 proceedings would have provided any additional information regarding the stricken testimony of the DEA agent or the OPR investigation. Even if the two proceedings did concern the OPR investigation of the DEA agent, however, cross-examination on this subject would not have been admissible at trial.[9] This Court precluded all cross-examination of the DEA agent on the subject matter of the OPR investigation, as the investigation had ultimately been found to be unsubstantiated.[10] (<u>See</u> Akefe Tr. at 608-609.)  Akefe has failed to establish how, if evidence pertaining to the March 17 and 25, 2009 proceedings had been produced, the result in the Akefe trial would have been different. Therefore, the Government did not violate its obligations under <u>Brady</u>.

### D. Even if the Evidence was "Newly Discovered," a New Trial Would Not be Warranted

Even if Akefe had presented newly discovered evidence, a new trial would only be warranted if, after evaluating the entire record of the trial, this Court was left with a "real

---

[9] Although evidence need not itself be admissible at trial to fall under the requirements of <u>Brady</u>, it must at least "potentially lead[ ] to admissible evidence favorable to the defense." <u>United States v. Rodriguez</u>, 503 F. App'x 72, 74-75 (2d Cir. 2012). Further, to establish a <u>Brady</u> violation, the accused must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." <u>Kyles v. Whitley</u>, 514 U.S. 419, 435 (1995). In this case, the Defense does not point to any admissible evidence subject to these <u>Brady</u> requirements. Even in the unlikely event that admissible evidence could have been derived from the two preliminary hearing transcripts requested, that new evidence would not "undermine confidence in the verdict." <u>Id.</u>

[10] The Court precluded cross-examination of the DEA agent on the unsubstantiated OPR investigation. (<u>See</u> Akefe Tr. at 608-609.)  Notably, Akefe did not raise any discovery objections in the memorandum in opposition to the Government's motion in limine. That memorandum discusses the subject matter of the hearings in Detroit at some length without raising any discovery concerns. (<u>See</u>  Def.'s Mem. in Opp'n to Gov't Mot. in Limine at 2-3, ("Def.'s Mem. in Opp'n to Gov't Mot. in Limine"), ECF No. 48.) Further, at trial, counsel for Alade, Akefe's co-defendant, stated directly, "They gave [the transcripts] to us in discovery." (Akefe Tr. at 608.) Additionally, Akefe's trial counsel was fully familiar with what took place at the preliminary Michigan proceedings, since he was present as Akefe's counsel. (<u>See</u> Akefe Tr. at 609; <u>see, e.g.</u> Mins. Entry 3/17/09; Mins. Entry 3/25/09.)

concern that an innocent person may have been convicted." Ferguson, 246 F.3d at 134. Here, there is no such concern. Given the strength of the evidence of Akefe's guilt presented at trial, there is no concern that newly discovered evidence "could, if believed, change the verdict," Gambino, 59 F.3d at 364.

First, the circumstances of Akefe's arrest show his connection to the drug conspiracy of which both he and Saad were a part. Saad, after her arrest in February 2009, agreed to contact "Abby" and "Inno," drug dealers with whom she had engaged in past drug transactions, and made a series of calls to them recorded by the DEA. (See Akefe Tr. at 239.) In the course of these phone calls, Saad was instructed to deliver heroin to Detroit. This instruction was in accordance with the modus operandi of this drug conspiracy, namely that Saad never knew the identity or telephone number of the person or persons she was to meet, and Abby and Inno would arrange for someone in the United States to call Saad on her cell phone to set up the meeting. (See Akefe Tr. at 393, 400-01.)  She gave Abby a new number for a cell phone supplied by the DEA on February 19, 2009, so that the person to whom she was to deliver the heroin could reach her.  (See GXs 4T-8, 4T-9, 4T-10, 4T-11, 4T-12; Akefe Tr. at 402.) Abby instructed her to go to "the same place [as last time]" and that the person she was to meet would call her when she got there.  (See GX 4T-4; Akefe Tr. at 402-03.) On the morning of February 20, 2009, a number with a 313 area code called Saad's phone. (See Akefe Tr. at 342, 349.)

In response to the missed call from the 313 area code, the DEA agent in control of Saad's new phone sent a text message stating that she would be in "room 136 at 11:00" but containing no hotel identification. (See GX 13C.) On February 20, 2009, Akefe arrived at the Traveler's Inn, located on Telegraph Road between Plymouth Road and Chicago Road, in Detroit, Michigan and knocked on Room 136. (See Akefe Tr. at 505-08.) This location was one

suggested to Saad in a text message from her drug contact Abby, who was then in India. (See Akefe Tr. at 348.) Akefe had arrived at the hotel with two cell phones, including one bearing the 313 area code that had contacted Saad, a brown paper bag containing $9,980 in cash[11] and a lottery ticket with handwriting including the words "Inno," "India," "Travel Inn," "Telegraph," "Chicago," "RM 136," and the full telephone number for the phone being used by the law enforcement agent posing as Saad.  (See GX 12; Akefe Tr. at 506-12; id. at 575-77.)

Further, Government evidence from Akefe's cell phone presented at trial showed that Akefe had been in contact with Adebayo Odumade, his cousin and a dealer of heroin, at least eight times in the twenty-four hours leading up to his arrival at the Traveler's Inn.  (See GX 14; GX 14S; GX 15; GX 15S.)

In sum, initiating contact with Saad at her new number showed that Akefe had to be in contact with conspirators of Abby and Inno. His arrival at the precise address where Saad was staying, the cell phones and the notes found on his person, the calls he made in the hours before his arrest, and the amount of cash found in the brown paper bag, all establish that Akefe was involved with conspirators of Abby and Inno, and that he had arrived at the hotel to exchange money for drugs.

Further, testimony from another cooperating witness, Ademilola Ogunmokun, confirmed that Akefe was part of an ongoing drug conspiracy. He testified that he had delivered heroin to Akefe in Detroit at least five times from 2007 to 2008. (See Akefe Tr. at 767.) Ogunmokun further testified that he had delivered heroin at the direction of Odumade, who was his brother-in-law. (See Akefe Tr. at 756-59.) He picked up payments for heroin from Akefe on at least ten

---

[11] This amount of money would not have been a complete payment for 1.7 kilograms of heroin. However, Saad testified that she often was not paid in full immediately and sometimes would have to wait for payment until the drugs were sold. (See Akefe Tr. 390-91.)

separate occasions. (See Akefe Tr. at 768.)  On one of those occasions, Ogunmokun and Akefe were both arrested. At the time of that arrest, Ogunmokun was in possession of over $43,000 in heroin payments that he testified that he had received from Akefe.[12] (See Akefe Tr. at 773.)

Given the strength of the evidence presented in the Akefe trial, the Court is not left with a "real concern that an innocent person may have been convicted." Ferguson, 246 F.3d at 134. Therefore, even if the evidence presented by Akefe was newly discovered, no new trial would be warranted.

### Conclusion

The Court's conclusion on review of all the evidence presented in connection with Akefe's motion for a new trial pursuant to Rule 33 of the Federal Rule of Civil Procedures is without merit.  The evidence presented by Akefe is, by and large, not newly discovered, and the snippets of evidence which might be considered newly discovered do not give this Court reason to believe that an innocent man has been convicted. Accordingly, justice does not so require granting Akefe's request for a new trial.

Defendant's Rule 33(b)(1) motion is DENIED.

SO ORDERED.

Dated:  New York, New York
        August 30, 2013

                                                       */s/*
                                                       Robert P. Patterson, Jr.
                                                       United States District Judge

---

[12] At the time of his arrest in July 2007, Ogunmokun told the arresting officers that he had inherited the money from his father and that he planned to invest in real estate in Detroit. (See Akefe Tr. at 772-74.) In a forfeiture proceeding, he made a claim to recover the $43,000; pursuant to an agreement made with the Wayne County prosecutor, Ogunmokun recovered about $9,000. (See id. at 807-15.)